May it please the Court, my name is Stacey Sprinkle and I'm here on behalf of the appellant Darryl Hubbard and I'd like to reserve two minutes for my rebuttal. The District Court's conclusion that the defendants here just barely met their burden of proving non-exhaustion is wrong as a matter of law. It is clear that the defendants bore the burden of proving that Mr. Hubbard failed to exhaust his administrative remedies. As a matter of law under this Court's ruling in Wyatt v. Terhune, the defendants did not meet their burden. There are easy steps that the prison could have taken but did not take to try to establish and try to carry its burden to show that no appeal, no timely appeal was filed by Mr. Hubbard. For example, they could have shown that prisoners are provided with copies of all appeals that they submitted or that prisoners do have access to a photocopier. They could have provided receipts for mail or shown that they had a logging system for the mail. They could have shown postage disbursements or other kinds of evidence to establish that Mr. Hubbard's contentions could not be true. They could have submitted a declaration explaining how the appeals system works, explaining how the prison mail system works, explaining how appeals are submitted and logged and tracked, but they didn't do any of those things. They could have submitted a declaration explaining what Mr. Hubbard's appeals tracker was and how it showed what they contended that it showed, but they didn't do that. In fact, the only evidence that they submitted, which is in the record at 31 to 34, was a declaration in which the declarant did not even deny that Mr. Hubbard submitted a timely appeal, and he did not deny that Mr. Hubbard exhausted his administrative remedies. And the court in Wyatt, this court in Wyatt, noted the absence of such a declaration. To be clear, there's a reason why the burden is on defendants in these cases, and that's because prison officials have access to procedures and policies, to records and recordkeeping, to witnesses and documents, photocopiers, legal expertise, all of the things that Mr. Hubbard, who was proceeding pro se in the district court, did not have. The district court here implicitly and impermissibly shifted the burden back to Mr. Hubbard to establish that he did, in fact, submit a timely appeal. Mr. Hubbard was essentially asked to prove that which he had no means to prove because the prison did not provide him with the means to prove it. He did not have access to a photocopier to make copies of his appeals before he submitted them. How come he had copies of his other appeals? If you look at those copies, and the clearest versions are in the supplemental excerpts of record at 23, 28, and 34, you will see that there is a received stamp in the lower left-hand corner. If Mr. Hubbard's appeal is received by the prison and logged, and every copy of any appeal that he has in the record has that received stamp on it. So it does not indicate that he was able to make copies of some and not others in advance of sending it in, but rather, it indicates that he was able to make copies of some. Kennedy. Could you infer from the practice that the prison, when they get a complaint, they put a received stamp on it, make a copy and send it back to the prisoner? Could you infer from that custom that if Hubbard didn't have a copy, that means the prison never received it? Well, I don't think that you can infer that Mr. Hubbard did not, in fact, place it in the mail, which is what he contends. And he contends that his appeals were being discarded and never logged and never responded to. So I don't think that you can infer from that fact that his contention, that his appeals were being discarded, is untrue. I think you can only infer that the prison did not respond to those appeals and sent him a copy. But that contention, I don't know if it, you know, crosses the line of plausibility. It's obviously, in a manner of speaking, you can't blame him for not alleging more But on the other hand, you know, it seems like it's just a wild accusation that, well, they, you know, I sent it to them, but they threw them all away. That's all it amounts to, isn't it? Well, if you view that accusation in the context of the numerous appeals that he contends that he submitted, in addition to the evidence in the record that he was repeatedly, repeatedly writing to anybody who might listen to him, the Office of Inspector General, the appeals board, the he sent numerous letters. And the warden responded. I mean, he has numerous letters in the record that he received in response. It really demonstrates a pattern of attempting to get somebody to listen and really a failure of he basically felt that he had exhausted his resources, nothing was going to happen. And after several months of doing that, he filed the complaint in this action. Let me ask you this. Suppose we agree with you that, you know, he says he put them in the mailbox. The other side says, we never got them. If that's the circumstance, what's the remedy? Do we send it back for a hearing or do you automatically win? Or shouldn't the judge hold a hearing? If we agree with you, shouldn't the judge have an evidentiary hearing and decide? I would, I mean, I would say that the defendants bore the burden and they didn't meet their burden. And so it should be reversed and the case should proceed. But certainly at a minimum, I believe that he would be entitled to a hearing, particularly given the fact that the district court made an impermissible credibility determination without holding a hearing and allowing Mr. Hubbard to appear and answer any of these questions. But there really is no evidence that disputes Mr. Hubbard's contention in his sworn declaration that he did submit a timely appeal. That's what I'm saying. There's a conflict. He says he sent it. You know, if you believe him, then he sent it. If they say they didn't receive it, you know, it's not illogical to draw an inference the reason they didn't receive it is because he didn't send it. I don't know how, without taking testimony, you resolve that. It's true, although they didn't, in their evidence, they didn't say that they didn't receive it. Well, you just agreed they didn't receive it. Well, I agreed that they didn't respond to it and provide a copy of the document. I mean, he himself provided a log of stuff that shows that this was not one of the things they received. Well, yeah, he submitted a log that was provided by him in response to an inquiry to the inmate appeals branch. But that log, he submitted that log as evidence of the fact that many of the appeals that he submitted were not being logged at all. And, you know, there's no declaration, there's no evidence in the record from the defendants contend that it shows. And this was squarely at issue in Wyatt as well because the Court found that a similar appeals record was ambiguous on its face and that without more evidence, there was no way to establish that that appeals record that doesn't contain dates, for example, established that the prisoner did not actually exhaust his administrative remedies. You mentioned you wanted to save a couple of minutes. Okay. All right. Thank you. Good morning, Your Honors, and may it please the Court. Deputy Attorney General Kenneth Roost for defendants, appellees Hogland and McBride. The Prison Litigation Reform Act requires that an inmate exhaust all available administrative remedies before bringing suit. This case began just like the Court's precedent, McKinney v. Carey, in that Hubbard tried to exhaust after filing suit. First, he filed a complaint, silent as to any allegation of previously submitted and unanswered grievances. Then he moved to stay the case in part to exhaust his administrative remedies. Then he submitted a late grievance, the only one in the record here, about a year late under the prison regulations, to which the appeals coordinator provided a screen-out form explaining that it was late. The grievance submitted by Hubbard tellingly has no allegation of previously submitted and unanswered grievances. Hubbard explains that he simply resubmitted this grievance, and the appeals coordinator again screened it out for being late. Hubbard never alleges or provides any evidence that he tried to notify the appeals coordinator that he had previously submitted four unanswered grievances here to explain why he was late. Instead, Hubbard then filed an amended complaint alleging for the first time that he had submitted four unanswered grievances before bringing suit. His own actions demonstrate his failure to follow the rules. Didn't he file a sworn statement that he filed this administrative complaint? Yes, Your Honor. But don't you have a — doesn't that mean you have a responsibility to show that that's wrong in some way if you're going to win on your exhaustion argument? Well, in part, Your Honor, defendants do bear the burden of showing a failure to exhaust until the inmate concedes to non-exhaustion, as is the case here. In that instance, the inmate is trying to avail himself of an exception to the exhaustion requirement, in which case the burden then falls onto him under this Court's published precedence in Sap v. Kimbrell, where the inmate was alleging — Where did he concede non-exhaustion? He never alleges that he submitted a grievance and appealed it to all four levels of review. Instead, he's alleging that staff action thwarted his good-faith exhaustion efforts. That falls under this Court's precedence in Sap v. Kimbrell, where an inmate was alleging that his grievances were being improperly dismissed. In that case, the Court said to fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies, but was thwarted. Similarly, in Novi Woodford v. Remand before this Court, the Court noted that no has not shown that administrative procedures were unavailable, that staff obstructed his attempts to exhaust, or that he was prevented from exhausting. In any event — Follow-up on Judge Adelman's question. Is there something in the record where he says, I put my grievance in the prison mailbox on time? Yes, Your Honor. Now, what basis does the magistrate judge have to disbelieve it without a hearing? Well, two kinds of evidence. First, the inmate's own testimony has been shown to be fallacious under the penalty of perjury in at least two instances in this case. First, Hubbard claimed to know, obviously, all the rules and regulations for exhaustion. Although he also maintained that he had one year to submit a timely grievance when, in fact, the regulations gave him 15 working days. How does that refute that he says, I put it in the prison mailbox on time? It doesn't directly refute it, Your Honor. Well, what else do you have to refute it? It simply calls into question — I understand. But, I mean, that's why you have a hearing. I mean, it very well may be you have a hearing and the judge hears, you know, looks him in the eye and says, I don't believe you. That's one thing. But if he says this is what happened and you don't have anything that directly refutes it, how do you avoid a hearing? Well, in part, Your Honor, it's impossible to have a declaration from a person with knowledge explain that Mr. Hubbard never submitted this. There's nobody who is watching the inmate. No, but you could have come up with an affidavit that says, you know, there's no way anybody could tamper with the mailbox. If he had put it in the mailbox, we would have gotten it. You didn't affect the magistrate, Judge Falsi, for coming up with nothing. That's true, Your Honor. Although there is a declaration from the appeals coordinator wherein he explains that the appeals office would never lose a grievance that's been logged and responded to. That they've received. But if somebody took it out of the box, they wouldn't have gotten it. That's true, Your Honor. It says he thinks somebody took it out of the box. That's his allegation under the penalty of murder. And you have nothing and you didn't come forward with anything to refute that. Simply the ocean of documentary evidence that plays against that allegation,  you know. In fact, don't you think what happened was the magistrate judge saw all this evidence that you're arguing about and pointing to, and in effect, he made a credibility determination, didn't he? He said, well, there's some evidence here that maybe he filed something on time, but without saying so, he concluded I simply don't believe him. Isn't that what happened? That's true, Your Honor. So can you do that without granting an evidentiary hearing? You know, it says, well, witness X is unbelievable. From his declaration. When the evidence is so significant to the contrary of that allegation, I think an evidentiary hearing would be unnecessary. The Court has discretion to manage its docket. And if any inmate allegation that, well, I submitted a grievance and it was dismissed, requires an evidentiary hearing, that would be a costly precedent to set because it requires an evidentiary hearing when you, for whatever reason, didn't see fit to file anything to refute it. Well, that's true, Your Honor. Alternatively, if the Court were to find that the evidence here was insufficient, it should remand for further factual development as the Court did in Wyatt v. Terahume. Why do you get two chances to show that he didn't exhaust? I mean, that's your burden. You didn't make it, so now you get to do it again? Well, that is what the Court did in Wyatt, is remand the issue for further factual development, Your Honor. That was very clear at the time. But why should we do that? I mean, shouldn't you have your chance? It's a procedural issue. Sometimes things like that are not, you don't prevail, you waive it, or something else happens, so now shouldn't we just go to the merits? Well, this is not an issue of the waiver. If the Court were correct that further evidence should have been put forward, the Court could have dismissed without prejudice to give the defendants the ability to put forward an evidentiary showing that would be more robust, as this Court is describing. The defendants could have done that. They did provide a declaration from the appeals coordinator that could have been more directly on point. It's unnecessary to take the discretion out of the Court's hands as to whether an evidentiary hearing in this instance is necessary, although given the individual circumstances, the Court might make that conclusion and hold one if it were to be remanded. The question before this Court, though, is not whether the evidence is all that it could have been in this case, but whether the evidence is sufficient to support the plausible conclusion by the district court that Hubbard did not submit the grievances that he allegedly did. And the documentary evidence is fully against him. He has a Level I, II printout documenting his administrative grievances, showing that he submitted and received answers to grievances during the timeframe at issue. He also, when he submitted the late grievance to the appeals coordinator, never explained why it was late. It was important that he do so because an appeals coordinator under Title XV has discretion to accept a late grievance. In a case raised by the plaintiff himself from the Seventh Circuit in Dole v. Chandler, he talked about how it was undisputed that an inmate provided a grievance, but the grievance never reached the appeals coordinator's reviews board, and the inmate had no ability to go forward at that point. But that same case discussed the opposite precedent in the Seventh Circuit in McCoy v. Gilbert, wherein the inmate could have sought discretionary late review and did not, suggesting that there was some potential available remedy left for the inmate. Just here, even though he filed a grievance after filing suit, he never notified the appeals coordinator why he was late. Had he, under Title XV, Section 3084.3c, the appeals coordinator only may reject a late grievance, but if the inmate had a reason why he couldn't submit a timely grievance, as his allegations here would show, then the appeals coordinator has discretion to accept it. The inmate never availed himself of the appeals coordinator's discretion, which itself is a fault in his exhaustion of administrative remedies. Something remained available to him. And also, he was seeking that remedy after filing suit. The Court has no further questions. We'll rest at this point on the paper. Thank you, Mr. Rooster. Thank you, Your Honor. Ms. Brinkley, you have a couple of minutes left, I believe. Thank you. I'd first like to point out that it was not Mr. Hubbard's burden to plead that he had, in fact, exhausted his administrative remedies. So the fact that he didn't plead that affirmatively in his complaint originally is not what's at issue here. I'd also like to address the appeals form and the fact that Mr. Hubbard did not reference his prior appeals. It's a form, and it doesn't ask anywhere for the appellant to reference any prior appeals. And I would also like to raise the fact that the defendants repeatedly have noted that Mr. Hubbard thought that he had an entire year to file the complaint at issue. Suggesting that that's somehow a concession of non-exhaustion. But I would say to the contrary, the fact that Mr. Hubbard continually, repeatedly insisted that he filed his first appeal on July 13th, 2008, despite the fact that he believed that he had an entire year to submit that appeal, it really demonstrates his credibility rather than undermining his credibility. Ultimately, it was the burden, the burden was on the defendants to show that Mr. Hubbard failed to exhaust his remedies, the remedies that were available to him. And Mr. Hubbard's contention here is that remedies were not available to him. He tried. He kept trying. And he did not succeed. So with that, thank you. Thank you, Ms. Frankel. And Mr. Roos, thank you, too. The case just argued to submit. Ms. Frankel, we know that you and your firm accepted this case on a pro bono basis. We want to thank you very much for doing this.
judges: Adelman, Tashima, Silverman